```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Waite, Schneider, Bayless      :
    & Chesley Co. L.P.A.,          Case No. 1:11-cv-0851

        Plaintiff,             :
                                   JUDGE JAMES L. GRAHAM
    v.                         :
                                   Magistrate Judge Kemp
Allen L. Davis,                :

        Defendant.             :

OPINION AND ORDER

This case is before the Court to consider the motion to compel filed by plaintiff Waite, Schneider, Bayless & Chesley Co. L.P.A. (the Firm). Defendant Allen L. Davis has opposed the motion and the motion has been fully briefed. For the following reasons, the motion to compel will be denied.

I. Background

The Firm filed this collection case against Mr. Davis seeking the recovery of legal fees incurred in connection with its representation of Mr. Davis in litigation involving CNG, a corporation of which he was the minority shareholder, and his sons, the controlling shareholders of CNG. That litigation is referred to by the parties as the "Hamilton County Action." Mr. Davis filed an answer and counterclaim. In his counterclaim, Mr. Davis asserts claims of breach of contract, breach of fiduciary duty, and malpractice, and requests a declaratory judgment holding that the Firm is not entitled to a fee of any kind.

As is relevant to the current motion, Mr. Davis's breach of contract claim arises from the Firm's alleged refusal to represent him in what the parties refer to as "other matters" or "Other Actions." These other matters are identified in the

counterclaim as the "Tax Court Litigation," the "Sarasota Litigation," and the "Florida Close Corporation Agreement Litigation." Mr. Davis was represented by Baker & Hostetler in the Tax Court Litigation, by Shumaker, Loop & Kendrick in the Florida Close Corporation Agreement Litigation and the Sarasota Litigation, and by Livingston, Patterson, Strickland & Siegel in the Sarasota Litigation. Baker & Hostetler also represented Mr. Davis in connection with the negotiation of his sale of stock back to CNG following the agreed dismissal of the Hamilton County Action.

## II. The Parties' Positions

The subject of the Firm's motion to compel is a request for production of documents directed to Mr. Davis seeking documents relating to the Other Actions, including attorney work product, and communications between Mr. Davis and his other attorneys retained in those actions. According to the motion to compel, Mr. Davis invoked the attorney-client privilege and work product doctrine and responded to the discovery request with a 215-page privilege log, a copy of which is attached to the motion. The Firm believes, however, that it is entitled to this information under the self-protection exception to the attorney-client privilege as recently set forth by the Ohio Supreme Court in <u>Squire, Sanders & Dempsey, LLP v. Givaudan Flavors Corp.</u>, 127 Ohio St.3d 161 (2010).

According to the Firm, under the Ohio Supreme Court's holding in that case, the self-protection exception is not limited to communications between an attorney and a client when that relationship has been put in issue by the client, as in a fee dispute or malpractice action. Rather, the Firm argues that <u>Squire Sanders</u> interpreted the exception to allow discovery of confidences between the client and other attorneys when they are "necessary" to the accused attorney's defense in a client-

initiated action.  Adding support to its interpretation of Squire Sanders, the Firm notes that, in that case, the Ohio Supreme Court held that the law firm was entitled to privileged communications between its former client and "non-Squire Sanders lawyers."  Further, the Firm asserts, again relying on Squire Sanders, that any attorney work product is discoverable to the same extent that the self-defense exception applies.  The Firm cites to several cases from various jurisdictions where courts have compelled discovery in circumstances it contends are similar to those presented here.

Arguing further, the Firm contends that not only is it entitled to discovery of the requested work product and privileged communications from Mr. Davis's other attorneys, the scope of the discovery to which it is entitled is extremely broad.  That is, the Firm asserts that Mr. Davis' counterclaim allegations are very broad and, therefore, the scope of its discovery must be equally so.  Accordingly, the Firm's position is that the discovery to which it is entitled "includes everything in the possession or control of [other] counsel retained by Davis."  The Firm cites to other state court cases in which it contends courts have upheld broad scopes of discovery in similar circumstances.

In response, Mr. Davis agrees that Ohio recognizes the self-protection exception and that it requires disclosure of otherwise protected communications between the former attorney and former client.  Mr. Davis contends that, consistent with this application of the self-protection exception, he has produced communications between himself and the Firm.  He disagrees, however, with the Firm's assertion that the self-protection exception extends to privileged communications between a former client and the former client's other attorneys.  He contends that Squire Sanders simply cannot be read in this way.  To the extent

that in Squire Sanders communications from other attorneys were required to be disclosed, these other attorneys were not outside counsel but the client's in-house counsel, or, that is, the client itself.

Further, Mr. Davis asserts that the cases cited by the Firm do not address the self-protection exception but instead rely on the doctrine of waiver as the basis for finding discoverable a former client's communications with other attorneys. Additionally, he argues that in these cases relying on waiver, the other attorneys whose communications were found discoverable had been engaged either as co-counsel or subsequent counsel in the matter about which the former client and former attorney were in dispute.  Mr. Davis contends that the situation here is easily distinguishable because none of his other attorneys were co-counsel or subsequent counsel in the Hamilton County action - the only case which he argues is relevant to his malpractice claim.

Further addressing the waiver issue, Mr. Davis recognizes that the Firm did not raise the issue and argues that the Firm cannot raise the issue now nor could it prevail on the issue had it been raised.  According to Mr. Davis, there is no express waiver here so the issue can only be one of implied waiver.  Mr. Davis contends that Ohio courts apply the test set forth in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), requiring that (1) the assertion of the attorney-client privilege is the result of some affirmative act by the asserting party, (2) as a result of the affirmative act, the asserting party has put the protected information at issue by making it relevant, and (3) the application of the privilege would deny the opposing party access to information vital to its defense.  Mr. Davis devotes much of his response to contending that, under this test, no waiver has occurred.  Finally, Mr. Davis argues that, because the

4

self-protection exception does not apply to make his communications with other attorneys discoverable, the work product of his other attorneys also is not discoverable.

In reply, the Firm outlines what it construes as concessions by Mr. Davis supporting its position. Further, the Firm argues that Mr. Davis' attempts to distinguish <u>Squire Sanders</u> are based on a "misreading" of that decision. The Firm expands upon its position that the <u>Squire Sanders</u> court specifically allowed discovery from the client's non-Squire Sanders attorneys.

Additionally, the Firm argues that Mr. Davis has failed to distinguish the authority on which it relies. The Firm contends that whether the issue is viewed as one of waiver or as an exception to the privilege is of no consequence. Rather, the Firm explains that the underlying principle of fairness sought to be enforced under either approach is the same - preventing the attorney client privilege from being used as both a shield and a sword. With respect to Mr. Davis' attempts to distinguish its cited cases on grounds that they involved attorneys who were engaged as either co-counsel or subsequent counsel, the Firm contends that this distinction has no impact here. The Firm asserts that this is so because, as Mr. Davis has represented to this Court, the Hamilton County Action and the Other Actions involved the same subject matter.

Finally, the Firm asserts that it did not make a waiver argument and Mr. Davis' attempt to focus on the issue of waiver is merely a diversionary tactic. According to the Firm, it did not make such an argument because, under Ohio law, there is no implied waiver of the attorney-client privilege. In making this argument, the Firm relies, in part, on <u>Jackson v. Greger</u>, 110 Ohio St.3d 488 (2006), as establishing that waiver of the attorney-client privilege in Ohio is governed solely by statute.

In summary, the Firm, relying squarely on the <u>Squire</u>

Sanders decision, makes three assertions: 1) the self-protection exception to the attorney-client privilege permits the disclosure to the Firm of communications between Mr. Davis and his counsel in the Other Actions; 2) based on Mr. Davis' allegations, the scope of discovery is necessarily broad; and 3) the attorney work product of counsel in the Other Actions is discoverable.  Mr. Davis argues that the Squire Sanders decision simply cannot be read as the Firm contends.  To the extent that Mr. Davis attempts to characterize the issue in this case as one of waiver, the Firm specifically asserts that it is not arguing its position in terms of waiver because, as it reads Jackson, Ohio does not recognize implied waiver of the attorney-client privilege.  Thus, the Firm's motion presents one primary question for resolution: whether, under Ohio law, the self-protection exception to the attorney-client privilege permits the disclosure to the Firm of communications between Mr. Davis and his counsel in the Other Actions.  If the Court disagrees with the Firm's reading of Squire Sanders, the Court need not consider any further issues raised by the motion to compel.  The Court will turn now to a discussion of the Squire Sanders decision.

### III.  Analysis

At the outset, the Court notes that there is no choice of law issue here and, as discussed above, the starting point for the Court's analysis is the Ohio Supreme Court decision in Squire, Sanders & Dempsey, LLP v. Givaudan Flavors Corp., 127 Ohio St.3d 161 (2010).  In that case, the law firm of Squire Sanders sued a former client, Givaudan, for breach of contract and legal fees.  Givaudan counterclaimed raising, among other claims, legal malpractice.  Squire Sanders sought document discovery relating to its representation of Givaudan and Givaudan's decision to terminate the representation.  Givaudan objected on grounds of attorney-client privilege and the work-

product doctrine.  When Squire Sanders deposed Givaudan's former and then current in-house counsel, Givaudan again asserted attorney-client privilege and the work-product doctrine.  Squire Sanders moved to compel both the production of documents and the testimony of in-house counsel.  The trial court granted the motion, directing Givaudan to produce the documents and directing the in-house counsel to answer questions regarding the Givaudan/Squire Sanders relationship.  The appellate court, viewing the issue as one of waiver, reversed.  On appeal to the Ohio Supreme Court, Squire Sanders argued that the common-law self-protection exception to the attorney-client privilege applied and that there was no privilege for Givaudan to assert or waive.  It also argued that the good cause requirement for obtaining attorney work product was satisfied.  Finally, Squire Sanders asserted that it was error for the appellate court to focus on the issue of waiver when such an exception applied.

Stating that the central issue before it was whether Ohio recognizes the self-protection exception, the Ohio Supreme Court explained the exception at some length as follows:

> At common-law, "[a]n exception to the attorney-client privilege permits an attorney to reveal otherwise protected confidences when necessary to protect his own interest." Levine, Self–Interest or Self–Defense: Lawyer Disregard of the Attorney-Client Privilege for Profit and Protection (1977), 5 Hofstra L.Rev. 783. This exception provides that "when an attorney becomes involved in a legal controversy with a client or former client, the attorney may reveal any confidences necessary to defend himself or herself or to vindicate his or her rights with regard to the disputed issues." 1 Stone & Taylor, Testimonial Privileges (2d Ed.1995) 1-177, Section 1.66. <u>See</u> <u>also</u> <u>Mitchell v. Bromberger</u> (1866), 2 Nev. 345; 1 McCormick on Evidence (6th Ed.2006) 414, Section 91.1.
> ...
> Further, the self-protection exception to the attorney-client privilege permitting the attorney to testify also applies when the client puts the

representation at issue by charging the attorney with a breach of duty or other wrongdoing. Weissenberger's Ohio Evidence, id.; 1 Giannelli & Snyder, Evidence, at 342. Courts recognize that " '[t]he attorney-client privilege cannot at once be used as a shield and a sword.' " In re Lott (C.A.6, 2005), 424 F.3d 446, 454, quoting United States v. Bilzerian (C.A.2, 1991), 926 F.2d 1285, 1292. Thus, a client may not rely on attorney-client communications to establish a claim against the attorney while asserting the attorney-client privilege to prevent the attorney from rebutting that claim.

  Rather, "the attorney-client privilege exists to aid in the administration of justice and must yield in circumstances where justice so requires," Moskovitz v. Mt. Sinai Med. Ctr., 69 Ohio St.3d at 661, 635 N.E.2d 331. The same considerations of justice and fairness that undergird the attorney client privilege prevent a client from employing it in litigation against a lawyer to the lawyer's disadvantage. Wolfram, Modern Legal Ethics (1986) 308, Section 6.7.8; Wright & Miller, Federal Practice & Procedure (1997, Supp.2010), Section 5503; Restatement (Third) of the **543 Law Governing Lawyers, Section 83, Comment b.

  Thus, courts apply the exception because "[i]t would be a manifest injustice to allow the client to take advantage of [the attorney-client privilege] to the prejudice of his attorney * * * [or] to the extent of depriving the attorney of the means of obtaining or defending his own rights." Mitchell v. Bromberger, 2 Nev. 345; see also Doe v. A Corp. (C.A.5, 1983), 709 F.2d 1043, 1048–1049; Daughtry v. Cobb (1939), 189 Ga. 113, 118, 5 S.E.2d 352; Stern v. Daniel (1907), 47 Wash. 96, 98, 91 P. 552; Koeber v. Somers, 84 N.W. at 995.

Squire Sanders, 127 Ohio St.3d at 169-172.

In concluding that Ohio recognized the self-protection exception, the Ohio Supreme Court further stated:

  Our decision today also comports with Prof.Cond.R. 1.6(b)(5), which provides:

  "A lawyer may reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the lawyer reasonably

8

> believes necessary * * *
>
> "(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client * * *." (Emphasis sic.)
>
> Further, Comment [10] to Prof.Cond.R. 1.6 explains that an attorney has a right to respond to the allegations of a client in a lawsuit that the attorney committed a wrong against the client. Comment [11] also specifies that an attorney may prove the legal services rendered to a client in an action to collect a fee, noting that this aspect of Prof.Cond.R. 1.6(b) "expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary."
>
> Ohio recognizes the self-protection exception to the attorney-client privilege, and that exception applies in this situation.  Therefore, R.C. 2317.02(A) does not prevent an attorney from responding to allegations that the attorney wronged a client or from establishing the reasonable value of the legal services rendered to a client to the extent that such evidence is necessary to establish a claim or defense on behalf of the attorney in litigation between the attorney and the client.

<u>Squire Sanders</u>, 127 Ohio St.3d, at 173.

This detailed explanation of the self-protection exception does not support the interpretation urged by the Firm.  As the very concept of self-protection implies, the above discussion confirms that the exception applies only to permit an attorney to reveal confidences when necessary to protect <u>himself or herself</u> in the context of a legal controversy with a client or former client.  Any other interpretation stands contrary to the common understanding of the exception as set forth in the significant authority relied upon by the Ohio Supreme Court.  As applied here, the self-protection exception would allow the disclosure of confidences only between the Firm (the accused attorney) and Mr. Davis (the client) because they are involved in a legal

9

controversy (this case). The idea that counsel who are not engaged in a legal controversy with a client or former client would somehow be permitted to reveal such a client's confidences in the name of "self-protection" simply defies the very definition of the exception.

In the concluding paragraphs of its opinion, however, the Ohio Supreme Court summarized the exception, using slightly broader language, as follows:

> Ohio recognizes a common law self-protection exception to the attorney-client privilege codified in R.C. 2317.02(A). Thus, when the attorney-client relationship has been placed at issue in litigation between an attorney and a client or a former client, the self-protection exception permits discovery of the evidence necessary to establish a claim or defense on behalf of the attorney.

Squire Sanders, 127 Ohio St.3d, at 176.

The Firm has seized upon this language in arguing that the self-protection exception applies not only to the disclosure of confidences between Mr. Davis and the Firm but also to confidences between Mr. Davis and his attorneys in the Other Actions because such information is "necessary" to the Firm's defense of his counterclaim. Moreover, the Firm argues that, because Mr. Davis's allegations are so broad, "everything in the possession or control of counsel retained by Davis" is necessary to defend against his counterclaim. The Firm bolsters its interpretation of the Ohio Supreme Court's holding in the case by noting that Squire Sanders was entitled to discovery from Givaudan's former and then current in-house counsel who were "non-Squire Sanders attorneys." Stated another way, the Firm has taken a portion of one sentence from the opinion's conclusion and the fact that the Ohio Supreme Court allowed discovery from Givaudan's in-house counsel to construct its argument that it is entitled to privileged communications and, by extension, work

product, from Mr. Davis's attorneys in the Other Actions.

The Court does not find the Firm's efforts persuasive. As a result, the Court does not interpret Squire Sanders as requiring that Mr. Davis produce documents from his attorneys in the Other Actions which are otherwise protected either by the attorney-client privilege or the work product doctrine. First, the Court does not read Squire Sanders as supporting an extension of the self-protection exception beyond its historically understood purpose. The Firm's taking wholly out of context particular language in the concluding paragraphs of the opinion does not undermine the Ohio Supreme Court's explanation of the exception plainly set forth earlier in the opinion. Second, while the Firm underscores its position by arguing that Givaudan's in-house counsel were "non-Squire Sanders attorneys," as Mr. Davis points out, under the circumstances of Squire Sanders, the attorneys are more accurately characterized as the "client itself." See Memorandum in Opposition, Doc. #49, fn. 6. This fact alone easily distinguishes the circumstances of this case from those of Squire Sanders.

Significantly, the Firm does not point to any other authority suggesting that the self-protection exception can be used to support the disclosure of client confidences by an attorney who is not the subject of an action brought by the client. Rather, as Mr. Davis points out, the other cases on which the Firm relies all involve instances of waiver. The Firm attempts to trivialize this distinction by contending that it is a distinction without a difference because, it argues, the same fundamental principles of fairness apply in either instance. While making this assertion, however, the Firm also notes that Ohio courts recognize a distinction between an exception to the privilege and a waiver of the privilege. Consequently, the Firm's claim that the distinction is of no consequence seems

11

disingenuous given its insistence that it is not asserting implied waiver in this case based on its understanding of Ohio law.

The significance of the difference between the exception and a waiver was discussed by the majority in Squire Sanders. The discussion was in response to Givaudan's argument against the application of the self-protection exception to the discovery sought by Squire Sanders. In making its argument, Givaudan relied on Jackson, the same case cited by the Firm as declining to recognize implied waiver. Jackson, was a legal malpractice action against an attorney and his law firm based on allegedly negligent advice in a criminal case. During discovery, the attorney sought all attorney-client communications and documents relating to a separate 42 U.S.C. §1983 action filed by his former client. The parties in Jackson argued that the statutory attorney-client privilege may be waived as set forth in Hearn. However, the Ohio Supreme Court "'decline[d] to add a judicially created waiver to the statutorily created privilege.'" Id. at 490, citing State v. McDermott, 75 Ohio St.3d 570, 574 (1995). Rather the Court held that "R.C. 2317.02(A) clearly enumerates the means by which a client may waive the statutory attorney-client privilege; by express consent or by voluntarily testifying on the same subject." Id. The court concluded that the client had not waived the privilege by either of those means, so granting the motion to compel was in error. The court recognized that several Ohio courts of appeals had applied the Hearn test, but stated that the General Assembly had chosen to limit the means by which a client's conduct may result in the waiver of the attorney-client privilege and it would not substitute its judgment for the legislature's. Id.

As the Supreme Court explained in Squire Sanders:

> Jackson dealt with the question of whether to

12

> recognize the doctrine of implied waiver of the attorney-client privilege as articulated in Hearn v. Rhay, 68 F.R.D. 574. Applying State v. McDermott (1995), 72 Ohio St.3d 570, 651 N.E.2d 985, the court explained that R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived. Jackson at ¶ 11. Jackson is distinguishable on its facts because it dealt only with a waiver of the attorney-client privilege; we concern ourselves in the instant case with a common-law exception to the privilege, the self-protection exception.
> ...
> In deciding Jackson and McDermott, we did not cast aside the well-established common-law exceptions to the attorney-client privilege. Unlike waiver, which involves the client's relinquishment of the protections of R.C. 2713.02(A) once they have attached, an exception to the attorney-client privilege falls into the category of situations in which the privilege does not attach to the communications in the first instance and is therefore excluded from the operation of the statute. ... In line with this analysis, Givaudan's reliance on Jackson is misplaced because Ohio recognizes common-law exceptions to the privilege as outlined above.

Squire Sanders, 127 Ohio St.3d, at 172-173.

The above discussion indicates that, while the Firm characterizes the issue as a distinction without a difference, current Ohio case law attaches significance to the distinction. Moreover, despite its attempts to minimize any distinction, the Firm recognizes as much. In fact, it is because of the significance of this distinction in Ohio law that the Firm, by its own characterization, argues for its interpretation of the self-protection exception in this case instead of arguing its position in terms of waiver. Stated more precisely, the Firm is asking this Court to recognize a creatively expansive interpretation of the self-protection exception in order to circumvent what the Firm, relying on Jackson, contends is Ohio's limitation on the implied waiver of the attorney-client

13

privilege.  The Court declines to do so.  Similarly, because the Firm's argument with respect to attorney work product hinges solely on the Firm's reading of <u>Squire Sanders</u> and Ohio law, the Court finds that argument to be without merit.

## IV.  Conclusion

For the reasons stated above, the motion to compel (#46) is denied.

## APPEAL PROCEDURE

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge

14