IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Waite, Schneider, Bayless &, Chesley Co., L.P.A., | Case No. 1:11CV851 |
| Plaintiff | |
| v. | **ORDER** |
| Allen L. Davis, | |
| Defendant | |

Plaintiff Waite, Schneider, Bayless & Chesley Co., L.P.A. (the Waite Firm), sues its former client, defendant Allen L. Davis, for unpaid legal fees. Davis counter-claims against the Waite Firm's attorneys, alleging: 1) breach of contract; 2) breach of fiduciary duty; and 3) malpractice.

Jurisdiction is proper under 28 U.S.C. § 1332.

Pending is the Waite Firm's motion to dismiss Davis's breach of contract and breach of fiduciary duty claims (Doc. 102).

For the reasons that follow, I grant the Waite Firm's motion to dismiss.

**Discussion**

Davis, a Florida citizen, was a minority shareholder in CNG Financial Corporation (CNG), a closely and privately held Ohio corporation. Davis's sons had a controlling ownership interest in CNG.

In 2001, CNG repurchased its stock from Davis's ex-wife who had acquired shares from Davis during their divorce. The repurchase was subject to an option agreement allowing Davis to buy back those shares at a future date. In 2004, Davis attempted to exercise his rights under the option, resulting in a dispute between him and his sons. Among the issues in contention were the tax treatment of the shares, the number of shares to which Davis was entitled, and the value of the shares.

On February 21, 2005, Davis entered into a contingency fee agreement with the Waite Firm to represent him in the CNG litigation (February 21 Fee Agreement). Under the terms of the agreement, the Waite Firm agreed to represent Davis on "claims related to [Davis's] CNG investments." (Doc. 1-1, at 1). The agreement also stated the Waite Firm was entitled to a contingent fee of either twenty-five or thirty-three percent, depending on the date of recovery "by way of suit, compromise, settlement, judgment, or otherwise." *Id*.

That same month, the Waite Firm filed an action for equitable relief against CNG in the Hamilton County, Ohio, Court of Common Pleas on behalf of Davis (the Hamilton County Action). *See Davis v. CNG Financial Corporation*, Case No.: A0501565 (Hamilton County Court of Common Pleas). The Hamilton County Action resulted in years of state court and collateral federal litigation, arbitration, and appeals.

On August 25, 2005, Davis signed a document supplementing the February 21 Fee Agreement (the Supplement). The Supplement states that Davis authorizes the Waite Firm to make offers of settlement on his behalf, "including a sale of your CNG stock." (Doc. 1-2, at 1). Davis contends that the Waite Firm used the Supplement to solicit buyers for his stock so that it could receive a thirty-three percent "brokerage commission." (Doc. 93, at 13).

During the course of the Waite Firm's representation of Davis, Davis became involved with additional litigation. First, in December, 2005, CNG sued Davis in a real property dispute in the Circuit Court of Sarasota County, Florida (the Sarasota Action). CNG claimed Davis had used company funds to make a down payment on a condominium unit.

Next, in October, 2006, the IRS issued deficiency notices against both Davis and his sons for failure to pay taxes when Davis exercised his stock repurchase option in 2004. In November, 2006, Davis began a suit against the IRS in the United States Tax Court (the Tax Action).

Finally, in April, 2010, CNG sued Davis in Sarasota County, alleging that Davis had breached a memorandum of understanding entitling Davis's sons to compensation equal to the value of the shares Davis received when he exercised his option (the Close Corporation Action).

Despite Davis's requests, the Waite Firm did not represent Davis in any litigation other than the Hamilton County Action. As a result, Davis hired different counsel for those actions.

The Hamilton County Action was scheduled for trial in April, 2011. Around that time, CNG's counsel and Davis's Tax Action counsel began discussing a possible global resolution of all matters in dispute between Davis, CNG, and Davis's sons. Counsel for CNG conditioned the talks on the non-involvement of the Waite Firm because CNG believed that firm to have been responsible for a high level of acrimony across the various litigations.

In furtherance of a global resolution, Davis instructed the Waite Firm to dissolve a preliminary injunction, which had barred CNG from making distributions to its shareholders, the Waite firm had obtained earlier in the Hamilton County Action. The Waite Firm strongly opposed dissolving the injunction and threatened to withdraw representation. It eventually assented and

3

followed Davis's instructions. The parties then dismissed their claims in the Hamilton County Action without prejudice.

Davis and his other counsel continued discussions and negotiations with CNG. After several months of discussion, the parties resolved to walk away from all litigation with no recovery for either side. The Waite Firm was not involved in those talks or with the resolution of the other lawsuits.

In December, 2011, the Waite Firm initiated the current action against Davis, alleging a breach of fee agreement because Davis did not remit the attorney fees to which it believed it should receive.

Davis's filed a counterclaim, alleging breach of contract, breach of fiduciary duty, and malpractice. Specifically, Davis claims that the Waite Firm's attorneys breached the fee agreement when it failed to represent Davis in the Sarasota, Tax, and Close Corporation Actions.

Davis claims the Waite Firm breached its fiduciary duty when the Supplement which it drafted was ambiguously worded and also purported to entitle the Waite firm to a thirty-three percent brokerage commission upon sale of Davis's CNG stock. Davis also alleges that the Waite firm, without authorization to do so, solicited buyers for his CNG stock and violated confidentiality agreements by disclosing proprietary information in its fee-recovery complaint in this case.

Finally, Davis asserts a malpractice claim based on the Waite Firm's activities in the Hamilton County Action. He claims the firm sought, contrary to his instructions, only equitable relief, rather than damages in an action at law. When the firm tried to amend the complaint for money damages, the trial court, finding the motion for leave to be untimely, denied the firm's motion. Additionally, Davis asserts that the Waite Firm repeatedly ignored Davis's instructions

4

during the course of litigation because they were not in line with the Waite Firm's economic interests.

## Standard of Review

A claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 556 U.S. at 678 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, supra*, 550 U.S. at 555; *see also Iqbal*, *supra*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

The gravamen of the Waite Firm's motion to dismiss is that, under Ohio law, Davis's malpractice claim subsumes the claims for breach of contract and breach of fiduciary duty. Davis argues that the malpractice claim relates solely to the mishandling of the Hamilton County Action

5

while the other two claims arise from underlying conduct apart and distinct from the Hamilton County Action.

Malpractice consists of "the professional misconduct of members of the medical profession and attorneys." *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App. 3d 89, 90 (Ohio Ct. App. 1982) (quoting *Richardson v. Doe*, 176 Ohio St. 370, 372 (1964)). "[A]n action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice . . . regardless of whether predicated upon contract or tort." *Id.* at 89-90. *See also Gullatte v. Rion*, 145 Ohio App.3d 620, 626 (Ohio Ct. App. 2000); *Rumley v. Buckingham, Doolittle & Burroughs*, 129 Ohio App.3d 638, 641-642 (Ohio Ct. App. 1998).

While "[m]alpractice by any other name still constitutes malpractice," *Muir*, *supra*, 4 Ohio App.3d at 89, a litigant may assert claims for, *inter alia*, fraud, breach of contract, and breach of fiduciary duty if the conduct underlying those claims is distinct from the conduct underlying the malpractice claim. *Pierson v. Rion*, 2010 WL 1636049, *2 (Ohio Ct. App.).

Thus, the key issue is whether Davis's breach of contract and breach of fiduciary duty claims arose from the manner in which the Waite Firm's lawyers represented him. If they do, then the malpractice claim subsumes those two claims. If they are distinct, however, then those claims may move forward.

**A. Breach of Contract Claim**

The Waite Firm argues that Davis's breach of contract claim stems from the manner in which its lawyers represented Davis. Thus, it contends this is actually a claim for malpractice.

Davis argues that his breach of contract claim arises from the Waite Firm's refusal to represent Davis in the Sarasota, Tax, and Close Corporation Actions. He contends that the Waite

6

Firm had an obligation to represent him pursuant to their obligation under the February 21 Fee Agreement to take on claims related to Davis's CNG investments. Because the Waite Firm refused and entirely failed to represent him at all in those actions – as opposed to the manner in which they represented him – Davis contends that the conduct is distinct from his malpractice action.

I find the Waite Firm's argument persuasive. In Ohio, failure or refusal to represent a client comes within the aegis of malpractice. *E.g.*, *Thut v. Canala*, 2005 WL 2000744, *3 (Ohio Ct. App.) ("it is well settled that an action by a client against his attorney for damages resulting from the manner in which the attorney represented, or failed to represent, the client, constitutes an action for malpractice"); *see also Rumley*, *supra*, 129 Ohio App. 3d at 641-642. Davis cites no Ohio case law for the proposition that refusal to represent a client constitutes a different claim than malpractice.

While the Waite Firm's attorneys may have breached their contractual obligation by refusing to represent Davis in the other actions, under Ohio law, such breach constitutes malpractice. *See, e.g.*, *Chambers v. Cottrell*, 2011 WL 281145, *2 (Ohio Ct. App.) (holding that attorney's failure to abide by his contractual obligation was a malpractice claim)*; U.S. Fidelity & Guar Co. v. Pietrykowski*, 2000 WL 204475, *3 (Ohio Ct. App.) (dismissing breach of contract claim because attorney's actions and omissions were "exclusively within the arena of the practice of law").

In *Rumley*, *supra*, 129 Ohio App.3d at 640, the plaintiff, *via* a contingency fee agreement, retained the defendant law firm to represent him in an employment action. The firm began representation.

The attorney handling the case eventually resigned from the firm. When he did so, he told the plaintiff he would no longer represent him. *Id*. at 640-641. The plaintiff filed a complaint alleging that defendant's refusal to continue to represent him constituted a breach of contract and malpractice.

The Ohio court found that both claims were "premised upon defendant's alleged acts or omissions committed in its representation of plaintiff." *Id.* at 641. Thus, the court dismissed the breach of contract claim and allowed only the malpractice claim to move forward. *Id.* at 642.

Here, Davis claims that the Waite Firm refused to represent Davis in violation of the February 21 Fee Agreement. Taking this as true, the refusal to represent still constitutes malpractice because it relates to the way the Waite Firm engaged in the practice of law. A failure to represent falls squarely within the realm of malpractice; it is quintessential professional misconduct.

Thus, I dismiss Davis's breach of contract claim.

### B. Breach of Fiduciary Duty Claim

Davis also claims that the Waite Firm's lawyers breached their fiduciary duty to Davis through their acts and omissions outside the scope of their legal representation. Specifically, Davis asserts that: 1) the Supplement to the February 21 Fee Agreement created a conflict of interest between him and the Waite Firm, and 2) the Waite Firm violated confidentiality agreements by disclosing proprietary information about Davis.

#### 1. The Supplement

Davis argues that the Waite Firm made him sign an ambiguously worded supplement to the February 21 Fee Agreement which entitled the firm to a thirty-three percent "brokerage commission" on the sale of Davis's CNG stock. He alleges that this created an improper interest in the Waite Firm's representation of Davis because the attorneys simply wanted a massive payoff by brokering the sale of Davis's stock, his largest asset, as opposed to pursuing the claims relating to CNG investments.

The Waite Firm contends that the malpractice claim also subsumes the breach of fiduciary duty claim. It argues that the Supplement – to the extent that it results in or encourages self-dealing – relates to the professional conduct of its attorneys and thus constitutes malpractice.

I find the Waite Firm's argument persuasive. Like breach of contract claims stemming from an attorney-client relationship, under Ohio law, breach of fiduciary claims are also encompassed by malpractice claims if they relate to the manner in which an attorney represents a client. *E.g.*, *Omlin*, *supra*, 8 F. App'x at 479; *Ill. Nat'l Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co.*, 2010 WL 4926572, *3-4 (Ohio Ct. App.). If the "gist of a complaint sounds in malpractice," then I treat duplicative claims as malpractice. *Ill. Nat'l Ins. Co.*, *supra*, 2010 WL 4926572, *3.

Here, Davis admittedly alleges that the Waite Firm's attorneys' conduct consisted of ethical violations. In his Third Amended Counter-Complaint, Davis states that the signing of the Supplement and the solicitation of buyers "amount to violations of the Ohio Rules of Professional Conduct." (Doc. 93, at 13). While ethical violations are not dispositive of malpractice, they "may sustain a claim for malpractice, when supported by expert testimony." *DeMeo v. Provident Bank*, 2008 WL 2426559, *8 (Ohio Ct. App.).

A conflict of interest, however, fits squarely within the realm of malpractice. In *Trustees of Ohio Carpenters' Pension Fund v. U.S. Bank Nat'l Ass.*, 189 Ohio App.3d 260, 265 (Ohio Ct. App. 2010), an attorney failed to disclose that he was working on the same transaction for potentially adverse parties. The plaintiff asserted a claim of malpractice which the court found time-barred. *Id.* at 264. When the plaintiff tried to amend the complaint to include fraud, the court denied the motion to amend, finding that the conflict of interest did not fall outside the scope of the attorney's representation. *Id.* at 267. The appellate court agreed, noting that "the gist of the [plaintiff's]

9

amended complaint involves actions or omissions taken in the court of [the attorney's] legal representation." *Id*.

Davis's contention that the Waite Firm tricked or induced him into signing the Supplement also falls under malpractice. In *Omlin*, *supra*, the plaintiff sued a law firm alleging "the firm made false representations for the purpose of inducing her to enter into a representation agreement." 8 F. App'x at 478. The plaintiff asserted a breach of fiduciary duty claim and the Sixth Circuit held that, under Ohio law, this was an action resulting from the attorney's manner of representation and thus was a malpractice claim. *Id.* at 479.

In sum, the Waite Firm's actions stemming from the Supplement all revolve around the way its attorneys represented Davis. Davis admitted as much by noting in his Third Amended Counter-Complaint that his representation was "characterized by a wholesale disrespect for the sanctity of the attorney-client relationship." (Doc. 13, at 25). Thus, this part of Davis's breach of fiduciary duty claim fails.

## 2. Appropriateness of the Disclosures

Davis also argues that the Waite Firm breached its fiduciary duty when it violated confidentiality agreements by making two disclosures in its complaint in this case. The disclosures were: 1) the terms of CNG's alleged offer to purchase Davis's stock, and 2) the fact of the resolution of litigation between Davis and CNG. Davis notes that the terms of CNG's offer was subject to an independent confidentiality agreement not bound by the attorney-client relationship. Thus, he contends the attorney-client privilege, and any of its exceptions, do not apply to that disclosure.

The Waite Firm argues that, under Ohio law, an attorney involved in a controversy with a client may reveal any confidences necessary which are pertinent to the dispute. The Waite Firm

contends that it asserted a quantum meruit claim and thus evidence of achieved success, which is indicated by the disclosures, is necessary to prove its claim.

I find the disclosures do not constitute a breach of fiduciary duty. As the Waite Firm contends, it is able to disclose *any* confidences, not just those protected under the attorney-client privilege, in establishing its defense or asserting its rights. *E.g.*, *Squire, Sanders & Dempsey, LLP v. Givaudan Flavors Corp.*, 27 Ohio St. 3d 161,169 (2010) ("[W]hen an attorney becomes involved in a legal controversy with a client or former client, the attorney may reveal *any confidences necessary* to defend himself or herself or to vindicate his or her rights with regard to the disputed issues.") (emphasis supplied) (citations omitted).

The Ohio Rules of Professional Conduct also supports this proposition:

> A lawyer may reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . .

Prof. Cond. R. 1.6(b)(5).

This Rule, titled "Confidentiality of Information," includes attorney-client confidences as a *subset* of information that can be revealed. Thus, the lawyer may reveal other confidences, when pertinent to the controversy between the lawyer and client.

Here, the Waite Firm asserted a claim for breach of fee agreement and, in the alternative, quantum meruit. To make its case, the Waite Firm disclosed the two confidences to establish that Davis breached the February 21 Fee Agreement by failing to disclose the terms of settlement with CNG and that it provided services to Davis by attempting to sell his stock to CNG. Thus, the confidences disclosed are directly related to the Waite Firm's claims and were appropriately made.

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT: the Waite Firm's motion to dismiss claims other than the defendant/counter-plaintiff's claim for malpractice (Doc. 102) be, and the same hereby granted.

So ordered.

/s/ James G. Carr
Sr. United States District Judge
