## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Waite, Schneider, Bayless
    & Chesley Co., L.P.A.,

        Plaintiff

      v.

Allen Davis,

        Defendant

Case No. 1:11CV851

**ORDER**

This is a suit by a law firm, Waite, Schneider, Bayless & Chesley Co., L.P.A., to collect fees from a former client, Allen Davis.

I recently granted summary judgment to Waite, Schneider on Davis's counterclaim for legal malpractice. *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, --- F. Supp. 3d ----, 2015 WL 1321744 (S.D. Ohio) (*Waite, Schneider I*). I then denied Davis's motion for summary judgment on Waite, Schneider's claims for breach of contract and quantum meruit. *Waite, Schneider, Bayless & Chesley Co., L.P.A.*, --- F. Supp. 3d ----, 2015 WL 1718513 (S.D. Ohio) (*Waite, Schneider II*).

Trial is set for September 1, 2015.

Pending are the parties' motions in limine (Docs. 161, 162, 163, 164, 165, 166, 178), the parties' motions for leave to file (Docs. 170, 197), Davis's motion to strike (Doc. 152), and Waite, Schneider's motions to vacate (Doc. 157) and exclude one of Davis's attorneys from testifying at trial (Doc. 192). This order sets forth my rulings on those motions, or reserves ruling pending further briefing, hearing, or factual development at trial.

## I.      Waite, Schneider's motion for leave (Doc. 170)

In late March, I ruled that Davis's claim that Waite, Schneider committed malpractice by refusing to represent him in three matters – the Sarasota Litigation, the Tax Court Litigation, and the Close Corporation Litigation (collectively, the non-Hamilton County Litigation)[1] – was untimely. *Waite, Schneider I*, *supra*, --- F. Supp. 3d at ----, 2015 WL 1321744, at *12-13, *14-18.

Waite, Schneider seeks leave to file a motion in limine excluding from trial any evidence of the firm's refusal to represent Davis in the non-Hamilton County Litigation. The gravamen of the motion, which I discuss immediately below, is that Davis cannot use such evidence to mount a set-off or recoupment defense.

Because my ruling came one day after the cutoff date for pretrial motions, and because I have continued the trial until September, I grant the motion for leave.

## II.     Waite, Schneider's motion to exclude evidence of its refusal to represent Davis in the non-Hamilton County Litigation (Doc. 178)

With Davis's malpractice claims now dismissed, the case will go to trial on Waite, Schneider's claims for: 1) breach of contract, based on Davis's refusal to pay the firm for representing him in the Hamilton County Litigation; and 2) quantum meruit.

Davis has interposed the defense of set-off, which he intends to prove with evidence that the parties' engagement letter obligated Waite, Schneider to represent him in the non-Hamilton County

---

[1] In brief, the non-Hamilton County Litigation and the case giving rise to this suit, the Hamilton County Litigation, arose from a set of disputes between Davis's two sons, who were at the times pertinent to all those cases majority shareholders in the payday loan firm CNG Financial Corporation, and Davis, who was a minority shareholder. In Davis's view, Waite, Schneider committed itself to represent him in all that litigation; in Waite, Schneider's view, it agreed to represent Davis only in the Hamilton County Litigation (for which it seeks to get paid *via* this suit). For more details, see *Waite, Schneider I* and *Waite, Schneider II*.

Litigation, and that, after the firm refused to do so, he hired new counsel to represent him in those matters at substantial personal expense.

Waite, Schneider contends this evidence is inadmissible.

The firm argues that, because, as I ruled in *Waite, Schneider I*, the statute of limitations bars Davis's counterclaim, Davis cannot turn around and, in effect, assert that claim in the guise of a set-off against the fee the jury may find he owes Waite, Schneider.

Waite, Schneider also argues Davis may not use the evidence relating to his dismissed malpractice counterclaim to prove a recoupment defense because: 1) he failed to plead, and therefore waived, that defense; and 2) in any event, the malpractice claim arises from a different transaction than the firm's claims.

### A.    Ohio law on set-off and recoupment

"[S]et-off and recoupment are distinct legal concepts." *Vorys, Sater, Seymour & Pease LLP v. IP of A Columbus Works 1, LLC*, 2014 WL 1384304, *8 (S.D. Ohio).

"Recoupment is a defense which arises out of the same transaction as plaintiff's claim, is a claim of right to reduce the amount demanded [by the plaintiff,] and can be had only to an extent sufficient to satisfy the plaintiff's claim." *Riley v. Montgomery*, 11 Ohio St. 3d 75, 77 (1984).

"A claim of a defendant which would be barred by the statute of limitations if brought in an affirmative action for relief is [nevertheless] available as a defense under the . . . theory of recoupment." *Id.*, syllabus ¶1.

In contrast, a set-off claim "arises out of a transaction other than the one giving rise to plaintiff's claim." *CSX Transp. v. Globe Metallurgical, Inc.*, 2007 WL 1567690, *9 (S.D. Ohio). Set-off is a right existing between two parties, "each of whom under an independent contract owes a

3

definite amount to the other, to set off their respective debts by way of mutual deduction." *Vorys*, *supra*, 2014 WL 1384304, at \*8.

"[I]f the statute of limitations has run for the underlying cause of action, set-off is barred." *Id.*

### B.    Rulings

First, because Davis's malpractice claim re. Waite, Schneider's refusal to represent him in the non-Hamilton County Litigation is untimely, he may not use evidence relating to that claim to mount a set-off defense. *Id.*; *see also CSX*, *supra*, 2007 WL 1567690, at \*9.

Second, although Davis failed to plead recoupment in his counterclaim, I decline to find he waived that defense. *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (failure to raise affirmative defense "does not always result in waiver").

All that has occurred in this litigation up to this point, including comprehensive discovery as to Davis's counterclaim, has put Waite, Schneider on notice of the gravamen of Davis's contention and what evidence he has to support it, thereby serving the purpose of Rule 8: "to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993).

Accordingly, Davis did not waive the recoupment defense.

Third, and nevertheless, Davis cannot assert a recoupment defense because his malpractice claim arises from a different transaction than Waite, Schneider's claims.

Waite, Schneider's claims allege Davis failed to pay the fee that came due when the firm satisfied one or more of the contingencies in the parties' contract. *Waite, Schneider II*, *supra*, --- F. Supp. 3d at ----, 2015 WL 1718513, at \*14.

Waite, Schneider's claims involve the firm's representation of Davis in the Hamilton County Litigation.

In that matter, the firm sought a "determination of Davis's rights under the Option Agreement, a declaration of the number of [CNG] shares to which he was entitled, and a finding that the shares he obtained via the Option Agreement were not compensation," but rather part of an earlier division of marital property. *Id.*, at *4. Davis accordingly characterized this litigation as primarily an "accounting" matter. (Doc. 188-1 at 5).

Waite, Schneider's claims also involve the firm's efforts to extricate Davis from his position as a minority shareholder in CNG. To that end, Waite, Schneider, while using the Hamilton County Litigation to pressure CNG into a settlement, generated three offers to purchase Davis's shares.

Davis's counterclaim, based as it is on Waite, Schneider's refusal to represent him in the non-Hamilton County Litigation, has little to do with the work the firm did in the Hamilton County Litigation.

The Tax Court Litigation, for example, concerned Davis's challenge to his sons' efforts to claim, on CNG's behalf, a tax deduction on the shares the company transferred to Davis in August, 2004. The claimed deduction resulted in a corresponding tax burden for Davis.

Furthermore, the Sarasota Litigation and Close Corporation Litigation concerned matters of CNG corporate governance. The former involved allegations Davis had breached his fiduciary duties by misappropriating CNG finds, while the latter involved Davis's and his sons' respective breaches of CNG's close-corporation agreement. *Waite, Schneider I*, *supra*, --- F. Supp. 3d at ----, 2015 WL 1321744, at *2.

Nevertheless, Davis argues the parties' claims arise from the same transaction because each claim has its roots in the parties' engagement letter. Just as that letter provides the basis for the firm's breach-of-contract claim, Davis contends, it likewise provides the basis for his claim Waite, Schneider breached its duty to represent him in the non-Hamilton County Litigation.

Ohio law does not support Davis's contention that, simply because the claims originate in the same contract, they arise from the "same transaction." *Riley*, *supra*, 11 Ohio St. 3d at 79.

Rather, in deciding whether two claims arise from the same transaction, courts applying Ohio law ask whether the claims involve "distinctive legal and factual questions, arise at different times[,] and involve different sets of evidence." *Wagner v. Circle W. Mastiffs*, 2010 WL 1009904, *6 (S.D. Ohio).

Here, Davis's claim involves distinct factual questions not implicated by Waite, Schneider's claim. These include, for example, whether the engagement letter obligated Waite, Schneider to represent Davis in the non-Hamilton County Litigation, whether the firm breached any obligation to do so, and the amount of damages Davis sustained.

Answering these questions, moreover, requires considering a substantial amount of evidence unrelated to, and unnecessary to prove, the firm's claims.

Because I conclude the parties' claims arise from different transactions, no recoupment defense is available to Davis.[2] *Wagner*, *supra*, 2010 WL 1009904, at *6 (claim that defendant violated Lanham Act by selling non-American Mastiffs as purported American Mastiffs arose from different transaction than defendant's counterclaim that plaintiff breached contract by not selling

---

[2] I do not accept Waite, Schneider's argument that my earlier ruling, for purposes of the statute of limitations, that the Hamilton County and non-Hamilton County representations were separate transactions necessarily requires the same ruling for purposes of the recoupment issue.

defendant actual American Mastiffs); *CSX*, *supra*, 2007 WL 1567690, at *8-9 (defendant's claim that railroad damaged its property while moving freight did not arise out of same transaction as claim that defendant failed to pay railroad's freight charges); *Lightbody v. Rust*, 2003-Ohio-3937, ¶51 (Ohio App.) (patent lawyer's claim that former partner breached contingency-fee contract arose from different transaction than partner's claims related to patent attorney's professional misconduct on leaving former partner's firm).

### III.     Waite, Schneider's motions to exclude evidence of damages and causation to establish Davis's malpractice claims or defenses (Docs. 164 & 165)

By these motions Waite, Schneider seeks to preclude Davis from offering any evidence that the firm committed malpractice in the Hamilton County Litigation and in the non-Hamilton County Litigation, whether to support his affirmative claim for relief or a set-off or recoupment defense.

Davis concedes that, in light of *Waite, Schneider I*, evidence of Waite, Schneider's malpractice in the Hamilton County Litigation s inadmissible to prove his affirmative claim for malpractice. He likewise concedes that, given my prior ruling, such evidence "cannot form the basis for recoupment or setoff." (Doc. 176 at 3). And while Davis contends he may present evidence of the firm's malpractice in the non-Hamilton County Litigation to prove his defenses, I rejected that contention earlier in this order.

I therefore grant the motions.

### IV.     Waite, Schneider's motion to exclude evidence of Davis's subjective understanding of the fee agreement (Doc. 163)

Waite, Schneider seeks to bar Davis from offering evidence or argument that he believes the fee agreement: 1) obligates the firm to represent him in the non-Hamilton County Litigation; and 2) does not entitle Waite, Schneider to a fee based on a sale of Davis's shares to CNG.

The firm points out that, at his deposition, Davis testified he did not question the Waite, Schneider attorneys about any terms of the engagement letter, and that he essentially has no memory of negotiating that agreement.

In these circumstances, Waite, Schneider contends, Davis's "'uncommunicated subjective intentions . . . have no significance in determining the meaning of disputed [contractual] terms.'" (Doc. 163 at 3) (quoting *G.F. Bus. Equip., Inc. v. Liston*, 7 Ohio App. 3d 223, 223 (1982)).

Davis responds that, to the extent I determine the engagement letter is unambiguous, extrinsic evidence of all sorts is inadmissible. But he argues that, should I find some portion of the agreement is ambiguous, then extrinsic evidence – including his subjective understanding of what the contract means – is admissible.

First, given my rulings re. the untimeliness of the failure-to-represent claim, all evidence relating to that claim is inadmissible. I therefore grant that portion of the motion with prejudice.

Second, neither side has sought a determination that any part of the engagement letter is ambiguous.

In my order denying summary judgment, I concluded a reasonable jury could find the engagement letter permits Waite, Schneider to recover a fee based on Davis's sale of shares to CNG. But I made no finding whether that part of the contract was ambiguous, as neither side made such an argument.

I will therefore grant the motion as to Davis's understanding re. the firm's ability to recover a contingency fee from the sale of his shares. I do so without prejudice to Davis's ability to seek, in a timely manner, a pretrial determination that the engagement letter is ambiguous.

8

**V.      Waite, Schneider's motion to exclude evidence or argument that the fee agreement is unethical and/or unenforceable (Doc. 162)**

Waite, Schneider also seeks to exclude evidence and argument that the fee agreement is unethical and thus unenforceable as a matter of law.

In his response, Davis represents he has no intention of presenting certain evidence or argument while defending against the breach-of-contract claim. Given those representations, I hold no party may introduce evidence or argue that:

1.      At the time the parties agreed to the representation, the law required that a contingent-fee contract be in writing;

2.      The fee agreement is unethical or unenforceable because the firm's fee increased with the passage of time;

3.      The fee agreement is unethical or unenforceable because the firm should have performed its services on an hourly basis; and

4.      Waite, Schneider could not base the contingency-fee agreement on generating or obtaining bona fide offers to purchase Davis's CNG shares.

Waite, Schneider also seeks to exclude four additional categories of evidence and argument:

5.      The fee agreement, though nominally a contingency contract, provides Waite, Schneider a non-contingent right to payment.

Inadmissible, given my ruling denying Davis's motion for summary judgment.

I would be willing to reconsider this issue should it become apparent that Waite, Schneider intends to invoke this provision to justify a fee in response to Davis's evidence that he terminated Waite, Schneider's services in March, 2011.

6.      Waite, Schneider could not base its contingent fee on a transaction involving a sale of Davis's shares;

9

Inadmissible, in light of Davis's representations that he advanced this argument only in support of his motion for summary judgment, and that he does not intend to introduce "factual evidence" on this point at trial. (Doc. 172 at 7).

7.    Waite, Schneider cannot collect a fee because it withdrew from the representation.

Admissible.

The facts surrounding whether Waite, Schneider withdrew from the representation, and whether it had good cause for any such withdrawal, are highly disputed. *Waite, Schneider II*, *supra*, --- F. Supp. 3d at ----, 2015 WL 1718513, at *14-15 & n.7. Davis is therefore entitled to present evidence and argument that Waite, Schneider withdrew from the representation to support his claim the firm is not entitled to a fee.

I will also, after conferring with counsel, issue appropriate instructions on a lawyer's ability to recover after withdrawing from a representation. Arguments consistent with such instructions are allowed.

8.    Use of pejorative or inflammatory terms in reference to Waite, Schneider attorneys.

By this section of its motion, Waite, Schneider seeks to bar Davis from arguing, or introducing evidence showing, that the fee agreement is unethical, unprofessional, and the like. (Doc. 162 at 16).

At present, I lack sufficient information to rule on this part of the motion.

Davis sought summary judgment on the ground that the fee agreement was unethical for various reasons. However, I denied that motion.

10

To the extent Davis wishes to pursue this theme at trial, and has the appropriate expert evidence to do so, it may be entirely appropriate for his witnesses to use the terms to which Waite, Schneider objects. It may likewise be a fair comment on the evidence to portray the Waite, Schneider attorneys' pursuit of a substantial contingent fee here in an unflattering light.

I will therefore reserve ruling, pending further hearing with counsel.

## VI.  Waite, Schneider's motion to vacate the order permitting the filing of certain documents under seal (Doc. 157)

During discovery, Magistrate Judge Terence Kemp granted Davis's motion for a protective order permitting Davis to tender certain documents – namely, a copy of Davis's Redemption Agreement with CNG and related materials – to Waite, Schneider with an "attorneys' eyes only" designation. (Doc. 45).

The Magistrate Judge found Davis's request justified because: 1) the Redemption Agreement "contain[ed] strict confidentiality provisions"; 2) CNG's counsel represented that Waite, Schneider had previously breached those provisions; and 3) the order allowed Waite, Schneider to challenge the "attorneys' eyes only" designation of any document. (*Id.* at 2).

In so ruling, however, Magistrate Kemp emphasized that his order was not "to be read as addressing the issues that arise in connection with a motion to seal documents from the public record." (*Id.* at 13). He noted that, while courts have wide latitude to restrict access to materials during discovery, *see* Fed. R. Civ. P. 26(c)(1), "a [c]ourt's ability to restrict access to public information [in court filings] is significantly narrowed." (Doc. 45 at 8).

After discovery concluded, the parties sought leave to file certain documents – primarily motions for summary judgment and the exhibits thereto – under seal. There were no objections to those requests, and I granted leave.

However, Waite, Schneider now seeks an order vacating my prior orders permitting the filing of sealed documents, and requiring the parties to make all future filings in the public record. The firm argues that there is a presumption under both the First Amendment and the common law that court filings are open to the public. It further contends Davis has not overcome the presumption.

Davis responds he properly filed these materials under seal, given the Redemption Agreement's strict confidentiality provision.

### A.    Public's right to access court documents

"Rule 26(c) allows the sealing of court papers only for good cause shown." *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). The Sixth Circuit "painstakingly discussed," *id.*, the grounds for sealing court papers in *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983).

In *Brown & Williamson*, the court identified three justifications for the public's presumptive right to access court documents.

First, "public trials play an important role as outlets for community concern, hostility and emotions. When judicial decisions are known to be just and when the legal system is moving to vindicate societal wrongs, members of the community are less likely to act as self-appointed law enforcers or vigilantes." *Id.* at 1178.

Second, "public access provides a check on the courts. Judges know that they will continue to be held responsible by the public for their rulings." *Id.* The public therefore "has an interest in

12

ascertaining what evidence and records the . . . Court [has] relied upon in reaching [its] decisions." *Id.* at 1181.

Third, "open trials promote true and accurate fact finding." *Id.* at 1180.

Strong though it is, the right of public access is not absolute.

There are two exceptions to the right. The first relates to the need to maintain order and dignity in the courtroom, while the second relates to the content of the information to which the public may exposed.

This case implicates the second exception.

"[C]ontent-based exceptions to the right of access have been developed to protect competing interests. In addition to the defendant's right to a fair trial, these interests include certain privacy rights of participants or third parties, trade secrets and national security." *Id.* at 1179.

### B. Ruling

Davis has failed to make any showing the information he designated attorneys-eyes-only, and which he and Waite, Schneider discuss in the sealed filings, falls within the second category the Sixth Circuit identified in *Brown & Williamson*. Rather, he relies on the fact that the Redemption Agreement contains a confidentiality clause.

While Davis's argument may have been sufficient to justify the protective order, it is insufficient to justify filing documents on the court's docket under seal. The mere fact that a third party may wish to keep certain information secret does not overcome the public's strong interest in accessing public documents.

Furthermore, I have reviewed the sealed materials and concluded, at least tentatively, I may place them in the public record without exposing any information CNG may protect under *Brown & Williamson*.

Out of an abundance of caution, however, I will reserve ruling on this motion pending further briefing from the parties.

Davis is ordered to show cause, within fourteen days of the entry of this order, why each document identified at pages 7 through 9 of Waite, Schneider's motion (Doc. 157 at 7-9) should not be unsealed and placed in the public record.

Waite, Schneider to respond within seven days thereafter. No reply permitted.

Leave granted to both parties to file their respective submissions under seal.

## VII.  Admissibility of evidence relating to Stanley Chesley's disbarment (Docs. 161 & 166)

The next set of motions concerns the admissibility of evidence relating to former Waite, Schneider attorney Stanley Chesley's disbarment in Kentucky.

Kentucky disbarred Chesley, a prominent class-action attorney, in 2013 because of his misconduct in the Fen-Phen class-action suit in Boone County, Kentucky. *Kentucky Bar Ass'n v. Chesley*, 393 S.W.3d 584 (Ky. 2013).[3]

When the Fen-Phen case began, there were four attorneys representing a class of 431 plaintiffs. Counsel had contingency-fee contracts with the individual plaintiffs entitling them to no more than 33.3% of any amount recovered. Chesley later joined the litigation under an agreement designating him "lead negotiator" and entitling him to a 21% contingency fee.

---

[3] Bar authorities in Ohio did not take reciprocal disciplinary action against Chesley, though Chesley has since retired from the practice of law in Ohio.

14

Shortly before trial, the parties agreed to settle.

In exchange for the plaintiffs' decertifying the class and dismissing their individual claims, the defendant pharmaceutical companies agreed to pay the class $200 million. Plaintiffs' counsel were responsible for allocating the fees among the class members, and for providing the defense with a schedule listing each class member's allocation of the $200 million payment.

In May, 2001, Chesley and other plaintiffs' counsel appeared before Judge Joseph Bamberger to present the order decertifying the class and dismissing the individual claims. Although the judge was concerned that counsel had not notified the class members either of the decertification or the dismissal of their claims, he nevertheless, at Chesley's urging, signed the order.

Plaintiffs' counsel then began meeting with individual class members to obtain the necessary releases of each member's claims. Counsel falsely told their clients the defendants had agreed to pay each plaintiff a specific sum. In each case, that amount was substantially less than the amount listed on the payment schedule plaintiffs' counsel submitted to the defense.

When the Kentucky Bar Association began investigating the Fen-Phen settlement, Chesley and the other plaintiffs' lawyers had an off-the-record meeting with Judge Bamberger.

Chesley persuaded the judge to authorize attorneys fees for himself and other counsel equal to 49% of the settlement award. But he did not advise the judge this amount was considerably higher than the contingency fees the class members had agreed to pay their lawyers.

At the end of the day, Chesley received roughly $21 million in fees, nearly $7 million more than he was entitled to receive under his contract.

The Kentucky Bar Association filed a complaint against Chesley; in 2011, the Trial Commissioner found Chesley had violated nine Rules of Professional Conduct.

15

In 2013, the Kentucky Supreme Court adopted that decision as to eight violations, concluding Chesley had, *inter alia*, accepted an unreasonable fee, failed to disclose a material fact to a court, provided incomplete, misleading, and/or false information to the disciplinary tribunal, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Davis wishes to introduce this evidence, or some portion of it, for three purposes.

First, he contends it is permissible impeachment evidence under Fed. R. Evid. 608(b)(1). Second, he asserts it is "background evidence" inextricably intertwined with the events giving rise to Waite, Schneider's claims. Third, he contends the evidence shows the firm's motive to collect a contingency-fee on the basis of his sale of shares to CNG, and is thus permissible under Fed. R. Evid. 404(b)(2).

### A.    Impeachment

The Rules of Evidence give me discretion to permit cross-examination about "specific instances of a witness's conduct" if those instances "are probative [of the witness's] character for truthfulness or untruthfulness[.]" Fed. R. Evid. 608(b)(1).

Contrary to Waite, Schneider's contentions, the fact of Chesley's disbarment, and several of the ethical violations that led to his disbarment, are directly probative of his character for truthfulness.

The record establishes that Chesley was disbarred for, *inter alia*, knowingly failing to disclose a material fact to a court, knowingly giving incomplete, misleading, and/or false answers during the disciplinary case, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

These violations are especially probative of Chesley's character for truthfulness, given that the Rules of Professional Conduct impose duties of candor on lawyers generally, and specifically when appearing before a tribunal and during disciplinary hearings. *See* Ky. R. Prof'l Conduct 3.3(a); Ky. R. Prof'l Conduct 8.1(a).

That Chesley knowingly violated his ethical obligations, both as part of a scheme to obtain an excessive fee and an unsuccessful effort to cover up that fact, provides a fair basis to question the credibility of his testimony.

Moreover, Chesley's credibility will be an important issue at trial, particularly on the issue whether Waite, Schneider withdrew from the representation. While Davis contends Chesley withdrew the firm during a conference call on March 17, 2011, Chesley and former Waite, Schneider associate Jim Cummins dispute or deny Davis's account.

Accordingly, I will allow Davis to impeach Chesley, on cross-examination, with the evidence relating to his disbarment. *U.S. v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989) (because evidence that attorney had been disbarred for misappropriating client funds "was particularly probative of his truthfulness," district court did not err in permitting impeachment on that ground); *U.S. v. Whitehead*, 618 F.2d 523, 528 (4th Cir. 1980) (permitting cross-examination where attorney had been disbarred for "conduct involving deceit and misrepresentation").

The real question is the scope of permissible cross-examination.

Certainly, Davis may inquire into the fact that Chesley was disbarred. Likewise, he may inquire into the specific violations that relate to Chesley's character for truthfulness or untruthfulness. Those are Chesley's:

- failure to disclose a material fact to a tribunal;

17

- giving incomplete, misleading, and/or false statements to the Kentucky disciplinary authorities; and

- engaging in deceitful conduct to obtain a fee to which he was not entitled.

To be sure, the evidence is prejudicial to Waite, Schneider, though it is not "unfair[ly]" so, for purposes of Fed. R. Evid. 403.

Most simply put, it is not unfairly or unduly prejudicial for a jury to learn that a lawyer seeking a substantial fee, or at least a share thereof, has previously lied to a court to secure a substantial fee to which he was not entitled.

Furthermore, I can avoid unfair prejudice to Waite, Schneider by: 1) limiting, to a bare bones recitation, the extent of any inquiry into the specific facts giving rise to each disciplinary violation; and 2) precluding reference to disciplinary violations other than those set forth above. Such evidence is irrelevant and, if introduced, likely to confuse the jury as to the actual issues to be tried.

If Chesley testifies, moreover, I will, if Waite, Schneider wishes me to do so, consider issuing a cautionary instruction immediately after this line of questioning during Chesley's cross-examination.

In these circumstances, there is no unfair prejudice to Waite, Schneider. Nor is there any basis for concluding the prejudice substantially outweighs the probative value of the disbarment evidence, which is not insignificant.

## B.   Background evidence

"Proper background evidence has a causal, temporal or spatial connection" with the matter at issue. *U.S. v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). In criminal cases, for example, background evidence "is directly probative of the charged offense, arises from the same events as

the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*

### 1. Davis's proposed use of the background evidence

According to Davis, he learned of Chesley's disciplinary problems from a newspaper article in February, 2011, that discussed the Kentucky Trial Commissioner's report recommending disbarment. After reading the article, Davis says, his "panic" about Waite, Schneider representing him "reached fever pitch," given that Chesley was one of the principal attorneys on his case.

Davis also contends the report fueled his growing concern over Waite, Schneider's competence to represent him. In early 2011, with the trial date in the Hamilton County Litigation fast approaching, Davis lodged many complaints with the firm over its failure to prepare for, and keep him apprised of developments pertaining to, the Hamilton County trial.

Therefore, when Chesley allegedly said the firm would withdraw from the case if Davis insisted on dissolving the dividend injunction, Davis jumped at the offer.

Davis argues that, "to understand the decisions facing [him] when the Waite Firm threatened withdrawal over the injunction issue, the jury must hear about the extreme dysfunction between attorney and client in early 2011, for which Chesley's disbarment was the exclamation point." (Doc. 166 at 21).[4]

Finally, Davis contends this evidence is necessary to rebut Waite, Schneider's theory that he dismissed the Hamilton County Litigation as part of a scheme to avoid paying the firm's fee.

---

[4] Of course, Chesley's disbarment in 2013 could not have been the "exclamation point" of attorney-client dysfunction occurring in 2011.

That Chesley faced disciplinary issues near the time Waite, Schneider allegedly withdrew, Davis asserts, further shows Davis had a legitimate motive – and was not scheming to avoid a fee – to end his relationship with Waite, Schneider, and resolve his disputes with CNG with new counsel.

### 2.    Ruling

First, I reject Waite, Schneider's contention there is no foundation for Davis to argue that Chesley's disciplinary problems motivated him to accept the withdrawal.

Davis has introduced an email he sent to Waite, Schneider that links to a newspaper article about the disciplinary proceedings. In the email, Davis urgently requested a phone call with attorney Cummins.

Whether, in fact, the evidence shows Davis was in a "panic" because of the disciplinary proceedings – especially when it appears Davis never mentioned this topic again in his correspondence with the firm – is a question about the credibility of Davis's evidence, on which I express no opinion.

There is thus an adequate foundation in the proof for Davis to make the argument.

But that does not mean the evidence comes in. It must still be relevant, and it is difficult to see how, in fact, Chesley's disciplinary proceedings are "inextricably intertwined" with, or even related at all to, Waite, Schneider's claims.

At best, the evidence of Chesley's disciplinary problems exists at one remove from the issue on which Davis seeks its admission: his acceptance of Waite, Schneider's alleged withdrawal from the representation in March, 2011, and his motive to end the relationship with Waite, Schneider.

Davis's moving papers tend to show that what motivated him to accept the alleged withdrawal was the "extreme dysfunction between attorney and client in early 2011[.]" (Doc. 166 at 21). This same course of conduct likewise supplied Davis with a motive to work with new counsel to resolve his disputes with CNG.

Why, in fact, that dysfunction existed – whether because of the chaos Chesley's disciplinary issues caused within the firm, or for some other reason – is of secondary, if any, importance.

Furthermore, there is no basis in the evidence before me for linking the "extreme dysfunction" in Waite, Schneider's offices to the disciplinary proceedings pending against Chesley.

The probative evidence on the issue of whether, as Waite, Schneider, claims, Davis dismissed the Hamilton County Litigation to avoid paying a fee encompasses matters such as the failure of the firm's lawyers to communicate with him, and the delegation of his case "to an inexperienced associate[.]" (Doc. 166 at 22).

For these reasons, the Chesley disciplinary proceedings do not provide proper background evidence to explain why Davis accepted the firm's withdrawal, or to rebut Waite, Schneider's theory that Davis wrongly discharged the firm to avoid paying a fee.

### C. Motive evidence

Evidence of "other acts" is admissible under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

Davis asserts the disciplinary proceedings and disbarment are "proof of the Waite Firm's motive to seek a 33% contingency fee calculated on the basis of the proceeds from a business

transaction [i.e., the sale of Davis's shares back to CNG] in which they admittedly played no part."
(Doc. 166 at 22).

I cannot agree this evidence is relevant on the issue of Waite, Schneider's motive to enforce
its fee agreement.

As I have already determined, a reasonable jury could find the fee agreement entitled Waite,
Schneider to a fee after Davis sold his shares to do so. *Waite, Schneider II*, --- F. Supp. 3d at ----,
2015 WL 1718513, at *14. Why the firm seeks to enforce that contractual provision is beside the
point. What matters is whether it can do so, not why it wants to do so.

For these reasons, I grant Davis's motion to admit evidence of the Chesley disciplinary
proceedings, as specified above, for impeachment purposes. I deny the motion in all other respects.
I deny Waite, Schneider's motion on this issue as moot.

## VIII.  Davis's motion to preclude Waite, Schneider's expert witness from testifying at trial and to strike his report (Doc. 152)

Waite, Schneider intends to call attorney Glenn V. Whitaker as an expert witness at trial.

Whitaker is a partner in the Cincinnati firm of Vorys, Sater, Seymour & Pease, where he
litigates *qui tam* and False Claims Act cases, class actions, and commercial matters. He is also a
fellow of the American College of Trial Lawyers.

According to his report, Whitaker intends to opine:

- •      Waite, Schneider is entitled to collect a contingency fee because at least two contingencies specified in the parties' contract occurred;

- •      "[T]he replacement of [Waite, Schneider] by new counsel and the dismissal of the [Hamilton County] action were all designed by Davis to avoid paying a contingent fee on the resolution of this case";

22

- The fee Waite, Schneider seeks, and the amount of time it spent representing Davis, are reasonable; and

- Waite, Schneider is entitled to a quantum meruit fee, "particularly given the proximity of [Davis's] settlement [with CNG to] the date Davis claims the relationship terminated and Davis' apparent efforts to circumvent the fee."

(Doc. 169 at 45-49).[5]

Federal Rule of Evidence 702 requires that I perform a "gatekeeping role" before admitting Whitaker's testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

## A.     The firm's entitlement to collect a contingency fee

At paragraphs 107-111 of his report, Whitaker explains why, in his view, Waite, Schneider is entitled to collect a contingency fee.

He bases the opinion on evidence that he recites earlier in his report, relating to, *inter alia*, the engagement letter, Davis's dismissal of the Hamilton County Litigation, and the occurrence of two contingencies. The first contingency, according to Whitaker, was the firm's acquisition of three

---

[5] Davis parses Whitaker's report to set forth five opinions. In my view, however, the third and fifth opinions – i.e., the reasonableness of the firm's fee – are essentially duplicative. Thus my ruling with regard to the third opinion identified in Davis's motion also applies to the fifth opinion.

offers to purchase Davis's CNG shares. The second accomplished contingency was Davis's sale of his shares to CNG *via* the September, 2011, Redemption Agreement.

Davis contends this opinion is inadmissible because it: 1) merely tells the jury what conclusion to reach – i.e., that Waite, Schneider is entitled to recover; and 2) constitutes Whitaker's interpretation of the parties' contingency-fee contract.

Waite, Schneider responds that "the reasonableness and enforceability of contingent-fee agreements is an appropriate subject for expert testimony because it is beyond the experience of the average juror." (Doc. 160 at 12).

After reviewing Whitaker's proposed opinion in light of the parties' arguments and relevant authorities, I find Davis's objection to this opinion well-taken.

First, "testimony that does little more than tell the jury what result to reach . . . is properly excludable under the Rules." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

Whitaker's opinion that Waite, Schneider is entitled to collect a contingency fee is merely his own interpretation of the evidence. Nothing in his background or his expert report, suggests he has some sort of expertise that would help the jury resolve what are, essentially, some of the major factual disputes in this case.

In essence, Whitaker would be giving a closing argument for Waite, Schneider from the witness stand, all while cloaked in the guise of "expert testimony."

Second, Whitaker's testimony is, essentially, an instruction how to interpret the fee agreement. But experts may not testify about the meaning of contractual language, absent some indication – which is not present here – the contract uses terms of art or refers to industry customs beyond the ken of average jurors. *TCP Indus. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981).

24

For these reasons, Whitaker may not opine that Waite, Schneider is entitled to a contingency fee.

**B.     Davis's purpose in retaining new counsel and dismissing the Hamilton County Litigation**

Whitaker also intends to opine that Davis's purpose in retaining new counsel, and instructing Waite, Schneider to dismiss the Hamilton County Litigation, was to avoid paying Waite, Schneider's fee.

Again, I agree with Davis that this testimony is irrelevant and inadmissible.

The jury will hear two different stories why Davis retained new counsel and dismissed the Hamilton County Litigation.

Waite, Schneider will argue these events were key steps in a scheme by Davis and his current lawyers to cut out the firm "on the courtroom steps," just before the firm would have obtained a victory at trial in the Hamilton County Litigation – or, perhaps, negotiated a settlement with CNG.

Davis, in turn, will try to show he: 1) dismissed the firm due to his long-standing and deep-seated dissatisfaction with its performance; and 2) insisted on ending the Hamilton County Litigation, not to deny the firm its fee, but because CNG had conditioned its willingness to negotiate with Davis on his doing so.

Whitaker, though he is an experienced litigator, has no particular skill or expertise that would permit him to testify, as an expert, to the "real story" behind Davis's actions.

Like the jury, he has no first-hand knowledge of these events. He can only draw inferences from the evidence and determine what, to his mind, is the most likely explanation for the events.

As persuasively explained in *Siring v. Oregon State Bd. of Higher Ed.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013), this kind of testimony merely substitutes Whitaker's opinion for that of the jury:

> Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.

In short, "[t]he intent of the parties is an issue within the competence of the jury," and Whitaker's "opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent." *CMI-Trading v. Quantum Air*, 98 F.3d 887, 890 (6th Cir. 1996).

Finally, the overall effect of Whitaker's opinion as to who should prevail in this case approaches, if it does not cross over entirely, the barrier to opinion testimony about credibility. *E.g.*, *William F. Shea, LLC v. Bonutti Research, Inc.*, 2013 WL 2424382, *3 (S.D. Ohio) ("an expert cannot simply opine on the credibility of witnesses and the weight of the evidence"); *see also Kakeh v. United Planning Org., Inc.*, 587 F. Supp. 2d 125, 130 (D.D.C.) ("an expert witness cannot usurp the jury's function by opining on the general credibility or honesty of a person").

At least implicitly, Whitaker would be telling the jury to believe Waite, Schneider's version of disputed facts, and disbelieve Davis and his witnesses.

Regardless, Whitaker's opinion will not help the jury decide a disputed issue, and thus is irrelevant and inadmissible. *Cf. DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (allowing expert to testify about cost-savings effect of defendant's actions, but holding witness "could not testify *as an expert* that [defendant] had a particular motive" in taking cost-savings actions) (emphasis in original).

## C.    Reasonableness of the Waite, Schneider attorneys' hourly rates and time spent on the representation

Whitaker also intends to opine that, to a reasonable degree of professional certainty:

> [T]he hourly rates charged and the amount of time expended by the Waite firm upon behalf of Davis were reasonable and appropriate. This is true irrespective of whether the rates are measured against local or national rates. With respect to the local rates, Mr. Chesley and Mr. Cummins' rates are more than reasonable for lawyers of their experience and skill. Both of these lawyers have handled matters on a local and national level. They have regularly litigated successfully against law firms which charge hourly rates well in excess of those sought in this matter. The other rates that are referenced in the claim by the Waite Law Firm are very much in line with local rates charged by law firms throughout Ohio. In fact, the rates are very consistent for attorneys, law clerks and paralegals with those of my own law firm. With respect to a comparison of the Waite Law Firm's rates with national rates, the Waite Law Firm's rates are considerably lower. For example, Mr. Chesley and Mr. Cummins' rates at national firms would be $300 to $350 per hour greater. My work requires me to deal with law firms in a number of major cities including Washington, D.C., Chicago, Illinois and New York, New York. The rates charged by lawyers of similar experience and skill in these cities are substantially higher than those charged by the Waite Law Firm.
>
> Similarly, the number of hours expended on this litigation is again reasonable, as evidenced by the tremendous efforts undertaken by the client and the results obtained.
>
> Typically subsumed with the determination of the reasonableness of the hourly rates are such factors as the experience of counsel, the nature of the opposition encountered, and the complexity of the matter. All of these factors, as noted in the factual assumptions, are supportive of the rates charged by the Waite Firm.

(Doc. 169 at 47-48, ¶¶114-116).

Davis contends this opinion is inadmissible because: 1) it is conclusory and unsupported by facts "concerning any billing practices or billing rates against which the Waite Firm's practices and rates were, or could be, measured"; and 2) Whitaker failed to justify why national rates provide an appropriate measure of the reasonableness of Waite, Schneider's fee.

Waite, Schneider's response does not address these objections directly. Rather, it faults Davis for failing to identify or apply the proper methodology for determining a reasonable fee. But it is Waite, Schneider's burden, not Davis's, to prove Whitaker's testimony is admissible. *Daubert*, *supra*, 509 U.S. at 592.

In further response, Waite, Schneider contends Whitaker supported his opinions with nearly forty pages of evidence relating to the firm's entitlement to a fee.

The firm is correct that Whitaker reviewed a great deal of evidence. However, the relevant section of his report – ¶¶107-118, where he opines on the reasonableness of the fee and hours expended – contains little to no factual underpinning for those opinions.

Whitaker does not identify, for example, a reasonable fee for corporate litigators in Cincinnati, nor whether that fee corresponds to the type of work Waite, Schneider performed in the Hamilton County Litigation, which was admittedly complex, hard-fought, and protracted.

He likewise fails to explain why it would be appropriate to measure the reasonableness of Waite, Schneider's hourly rates in this case against the hourly rates of attorneys working in far larger markets like Chicago or New York, rather than against the hourly rates of attorneys in Cincinnati, where the Hamilton County Litigation unfolded.

Furthermore, Whitaker has not attempted to justify why the contingent fee Waite, Schneider seeks – that is, one third of either the offers to purchase Davis's shares or the cash Davis received *via* the Redemption Agreement – is reasonable.

Nor, finally, does he explain why the fee Waite, Schneider seeks to obtain is reasonable, other than to say the hours worked and the complexity of the matter justify it.

28

One is therefore left to infer – or, less charitably, to speculate – why, according to Whitaker, Waite, Schneider's hours and fees are reasonable.[6]

Nevertheless, excluding expert testimony is the exception, not the rule. *Lokai v. Mac Tools, Inc.*, 2007 WL 2248166, *2 (S.D. Ohio). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, *supra*, 509 U.S. at 596.

Despite the flaws in his report, which go more to weight than admissibility, Whitaker may opine as to the reasonableness of the fee the firm seeks to recover, the reasonableness of the Waite, Schneider attorneys' hourly rates, and the reasonableness of the hours spent working for Davis.

Likewise, Whitaker may opine as to: 1) the considerations that go into deciding to undertake, and negotiating, a contingency-fee representation; and 2) whether a contingency-fee agreement is reasonable under the circumstances.

Given Whitaker's substantial litigation experience, his familiarity with the intricacies of complex commercial matters, and his study of the voluminous evidence in this case, I am convinced he is qualified to opine on, and has a sufficiently reliable basis for doing so, the reasonableness of Waite, Schneider's fee and the extent of its work on Davis's behalf.

That his report fails to spell out that basis opens the door to vigorous cross-examination by Davis, not *in toto* exclusion of Whitaker's testimony.

---

[6] Waite, Schneider represented Davis on a contingency-fee, not an hourly, basis. At trial, I presume the firm will try to show the contingency fee it wishes to collect – rather than the hourly rates of its attorneys – are reasonable. However, Whitaker's report focuses on the attorneys' hourly rates, and does not address the reasonableness of the actual contingency fee Waite, Schneider seeks.

29

This is so because, with a non-scientific expert like Whitaker, "reliability depends heavily on the knowledge and experience of the expert rather than the methodology or theory behind it." *Siring*, *supra*, 927 F. Supp. 2d at 1072. As just mentioned, Whitaker's report demonstrates he possesses the knowledge and experience to opine on the reasonableness of the fee at issue.

> **D.** **The firm's entitlement to recover in quantum meruit**

Finally, Whitaker proposes to opine that, given the evidence he has reviewed, Waite, Schneider is entitled to a fee in quantum meruit.

He emphasizes the fee is appropriate, not because it reflects a reasonable recovery or is commensurate with Waite, Schneider's efforts, but because of "the proximity of the settlement with the date Davis claims the relationship terminated and Davis' apparent efforts to circumvent the fee." (Doc. 169 at 49, ¶117).

This opinion is inadmissible for the same reason Whitaker's opinion regarding the firm's entitlement to collect a contingency fee is inadmissible: it is: 1) merely Whitaker drawing an inference from the facts; 2) an implicit (at least) comment on the credibility of the parties' evidence; and 3) in the nature of a closing argument from the witness stand.

Accordingly, Davis's motion to strike is granted in part and denied in part, as provided herein.

## IX. Waite, Schneider's motion to exclude testimony of attorney Benjamin Dusing (Doc. 192)

Finally, I turn to Waite, Schneider's motion to exclude the testimony of Benjamin G. Dusing, who was, until recently, Davis's lead attorney in this case.

After I denied Davis's motion for summary judgment, Dusing notified counsel for Waite, Schneider that he planned to withdraw as Davis's trial counsel in order to testify on Davis's behalf.

According to Dusing, "[t]he issues clarifying [his] status as a necessary witness . . . only recently became clear through the briefing process of the parties' cross-motions for summary judgment, and in particular, in light of the Court's analysis in its opinion and order denying Mr. Davis's summary judgment motion." (Doc. 192-1 at 1). For that reason, Dusing concluded he was now "forced to grapple with Rule 3.7 of the Ohio Rules of Professional Conduct." (*Id.*).

That rule, the so-called "attorney-witness rule," provides that "a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." Ohio R. Prof'l Conduct 3.7(a).

In support of its motion to bar Dusing from testifying, Waite, Schneider argues that: 1) Rule 3.7 obligated Dusing to consider, at the earliest practical date, whether he was likely to be a necessary witness; 2) Dusing knew or should have known, either at the start of the case or no later than early 2013, he was a necessary witness; and 3) Dusing violated the Rule by participating in pretrial discovery and waiting until I disposed of the parties' summary-judgment motions to consider whether he needed to withdraw from the representation.

In support of this argument, Waite, Schneider observes that Davis's answer and counterclaim (a pleading Dusing authored) alleges Dusing either participated in or witnessed two disputed events relevant to both parties' claims. The firm also contends its discovery filings and disclosures put Dusing on notice that it would dispute the version of events Davis and Dusing had outlined in the answer and counterclaim.

Finally, Waite, Schneider notes Dusing further wove himself into the fabric of this case by deposing Chesley and Cummins, and questioned them about the disputed events in which Dusing had participated.

Davis offers a two-fold response.

First, Davis contends "the attorney-as-witness issue is relevant to – and need only be addressed at – the time of trial." (Doc. 193 at 2). Thus, Davis argues, Dusing was free to participate in discovery, and he had no obligation to consider the likelihood of testifying at trial until it was clear there would be a trial.

Second, Davis argues that, as a factual matter, "the possibility of the need for Dusing's testimony at trial did not even come onto the radar screen until several years into this litigation." (*Id.* at 9). He asserts that Waite, Schneider's argument to the contrary "is transparently (and disingenuously) premised on its own version of the facts." (*Id.* at 10).

To resolve this issue, I find it necessary to recount, in some detail, the origins of this case and its progress through discovery.

### A.    Background

This case began in late 2011 as a collection action, with Waite, Schneider seeking to recover a fee for its representation of Davis.

The firm alleged that, despite fully performing its obligations under its contract with Davis, Davis had refused to pay the fee. Waite, Schneider also contended Davis had ceased communicating with the firm, and thereafter had retained new counsel and negotiated a resolution of his various disputes with CNG (and CNG-related disputes with his sons).

In February, 2012, Davis answered and counterclaimed against the firm for legal malpractice.

32

Davis alleged – both as a defense to Waite, Schneider's claims and as part of his malpractice claim (since dismissed) – that Waite, Schneider "withdr[ew] from the representation without cause, in a manner prejudicing Davis[.]" (Doc. 16 at 6; *see also id.* at 28 (seeking declaration that Waite, Schneider "is not entitled to a fee of any kind . . . because it terminated the representation without cause").

Specifically, Davis alleged Waite, Schneider withdrew, without cause, from the Hamilton County Litigation on March 17, 2011.

That day, Davis had a conference call with, *inter alia*, Chesley, Cummins, and an unnamed "attorney of the firm representing Davis in the Tax Court Litigation [who was also] involved in the general discussions with [CNG] regarding ways to resolve the conflict" between Davis, his sons, and CNG. (*Id.* at 24). Subsequent discovery and briefing established that Dusing was the unnamed attorney.

According to Davis's pleading, when Davis asked Waite, Schneider to dissolve the dividend injunction the firm had obtained in the Hamilton County Court of Common Pleas, Chesley threatened that, "if Davis were to persist in [that] demand," Waite, Schneider "would withdraw from the representation. (*Id.*).

Davis further alleged that, at a pre-trial conference the next day, the Waite, Schneider attorneys again refused to dissolve the injunction. When Davis learned of the refusal, he contacted the same unnamed lawyer – Dusing – "and dispatched this attorney . . . to again demand of [Waite, Schneider] that it do as Davis instructed." (*Id.*). Dusing reiterated Davis's demands, but Waite, Schneider did not – in Dusing's telling – comply.

33

Only after a further phone conference – in which Dusing also participated – did Chesley and Cummins relent and agree to dissolve the injunction.

After the dismissal, Davis and his unnamed "counsel" – Dusing – undertook "more than four months of intense discussions" with CNG in an effort to resolve Davis's disputes with the company and his sons. (*Id.* at 26, 27). Ultimately, with Dusing's assistance and without that of Waite, Schneider, Davis negotiated a resolution of those disputes in September, 2011.

When discovery in this case began, Waite, Schneider homed in on Davis's contention the firm had withdrawn without cause, and on Dusing's role in the settlement negotiations with CNG.

In March, 2012, Waite, Schneider served Davis with a request for production of documents. The firm sought, *inter alia*, evidence from Davis supporting his claim Waite, Schneider had withdrawn from the Hamilton County Litigation. Two months later, when Waite, Schneider filed its Rule 26(a) disclosures, it identified Dusing as a person with knowledge about what the firm characterized as "secret settlements of disputes between Defendant Davis, his sons and CNG." (Doc. 192-3 at 3).

Then, in August, 2012, Waite, Schneider moved to compel Davis to disclose, in accordance with the "self-protection exception" to the attorney-client privilege, certain communications between Davis and his many attorneys, including Dusing.

Magistrate Judge Kemp denied the motion, but I ultimately sustained Waite, Schneider's objections and ordered disclosure. *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 2013 WL 4757486 (S.D. Ohio). In seeking to overturn the Magistrate's order, Waite, Schneider asserted – in a pleading it filed in March, 2013 – that:

> Defendant Davis claims the Waite Firm is not entitled to its contingency fee because it purportedly walked away from the relationship. This is a pretext. The Waite Firm was in a co-counsel capacity on settlement issues and, acting in conjunction with his other attorneys, Defendant Davis fabricated the situation to avoid paying the fees owed.

(Doc. 73 at 2).

In that same pleading, the firm alleged that the "documents being withheld on a claim of privilege would likely reveal that Defendant Davis's actions constituted an attempt to exclude the Waite Firm and settle the litigation without it, thus avoiding his obligation to pay a contingent fee for the six years of effort the Waite Firm expended on his behalf." (*Id.* at 38).

Finally, the firm contended that, while Davis allegedly refused to communicate with Waite, Schneider after March 18, 2011, "settlement discussions led by the Baker [Hostetler] Firm" – for whom Dusing then worked – "continued for a period of months until a settlement was executed in late summer 2011." (*Id.*).

### B.     The attorney-witness rule

Ohio Rule of Professional Conduct 3.7 provides that "a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." The rule is, in all material respects, identical to the American Bar Association's Model Rule 3.7, on which many states have based their versions of the attorney-witness rule.

"The Rule serves two distinct purposes: protecting the client and protecting the integrity of the court proceeding." *Spotted Cat, LLC v. Bass*, 2014 WL 4072024, *3 (E.D. La.).

On the latter point, "where an attorney has observed or participated in events giving rise to facts disputed at trial, a jury may misinterpret his questions or summation as testimony conveying

his own version of those events." *Nelson v. Hartford Ins. Co. of the Midwest*, 2012 WL 761965, *4 (D. Mont.) (internal quotation marks and citation omitted).

Waite, Schneider contends that, because Dusing should have known at the start of the case that he was a necessary witness, the Rule obligated him to consider, when the case began, whether he would be Davis's attorney or his witness. The firm argues that, because Dusing was a necessary witness who nevertheless participated extensively in pretrial discovery, he may not now testify at trial.

Davis counters that Waite, Schneider's argument depends on stale case law. He points out that *Gen. Mills Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704 (6th Cir. 1982), on which the firm principally relies, interpreted earlier, more restrictive versions of the attorney-witness rule, ABA Disciplinary Rules 5-101 and 5-102.

Thus, Davis contends, the current Rule forbids Dusing only to act as Davis's trial counsel, and it did not preclude him from representing Davis in pretrial matters.

The parties have not cited, and I have not found, Ohio case law touching on the issue the parties dispute here: whether the rule forbids a testifying lawyer not only to act as trial counsel, but also to represent the client during pretrial matters.

However, courts outside of Ohio applying other states' enactments of ABA Model Rule 3.7 have addressed the issue.

As Davis accurately notes, the cases hold that Rule 3.7 does not categorically bar a lawyer who intends to testify for a client from participating in all pretrial matters. *E.g.*, *Main Events Prods., LLC v. Lacy*, 220 F. Supp. 2d 353, 356 (D.N.J. 2002) ("an attorney who will testify at trial need not be disqualified from participating in pre-trial matters"); *Cunningham v. Sams*, 588 S.E.2d 484, 487-

36

88 (N.C. App. 2003) (trial court properly disqualified attorney-witness from representing client at trial, but abused its discretion by disqualifying attorney-witness from representing client in pretrial matters).

At the same time, most courts recognize that an attorney who intends to testify at trial may not participate in "any pretrial activities which carry the risk of revealing the attorney's dual role to the jury." *Spotted Cat*, *supra*, 2014 WL 4072024, at *4.

In particular, a testifying attorney should not take or defend depositions. *Williams v. Borden Chem., Inc.*, 501 F. Supp. 2d 1219, 1223-24 (S.D. Iowa 2007) (disqualifying attorney from representing client at trial "and from taking or appearing at depositions of other witnesses"); *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1127 (D. Kan. 2004) (same); *World Youth Day, Inc. v. Famous Artists Merch. Exch.*, 866 F. Supp. 1297, 1303 (D. Colo. 1994) (accepting "general proposition that an attorney disqualified as a trial advocate may represent the client in pretrial activities," but concluding "this proposition must yield when the pretrial activity includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role"); *Nelson*, *supra*, 2012 WL 761965, at *8 (disqualifying attorney from taking depositions where "[a]llowing otherwise would risk confusing the jury and causing prejudice to [counsel's] clients and the defendants"); *Eon Streams, Inc. v. Clear Channel Comm'ns, Inc.*, 2007 WL 954181, *5 (E.D. Tenn.) ("whether a disqualification is operative pre-trial, for trial, or for both is a matter within the discretion of the court").

As these courts have recognized – and properly so, in my view – depositions:

> may be offered into evidence at trial and if [the testifying lawyer] is the one taking the depositions, or appears at the depositions to defend or for some other purpose, there is a risk that the offer of the depositions at trial would reveal [the lawyer's] dual role to the fact-finder, thus implicating the concern over fact-finder confusion at the heart of the advocate-witness rule.

37

*Williams*, *supra*, 501 F. Supp. 2d at 1223; *accord Gen. Mill Supply Co.*, *supra*, 697 F.2d at 716 ("the ultimate 'trial' is connected as a seamless web to the ascertainment of issues at the pretrial proceedings, and particularly to the discovery depositions"); *accord World Youth Day*, *supra*, 866 F. Supp. at 1304 ("it is naive to believe that depositions are divorced from trial advocacy").

### C.     Ruling

In light of the case law discussed above, I conclude Dusing violated his ethical obligations under Rule 3.7(a). He did so by, notwithstanding his role as a necessary witness: 1) participating in pretrial discovery likely to generate evidence used at trial – namely, by deposing Chesley and Cummins; and 2) failing to consider, until April 20, 2015 – the date of his letter to counsel for Waite, Schneider – whether his status as a necessary witness required him to withdraw.

Dusing's claim that his role as a necessary witness became clear only recently is not credible.

A reasonable attorney in Dusing's shoes should have realized, perhaps as soon as Davis filed his answer and counterclaim, that Dusing was likely to be a witness for Davis.

That pleading established Dusing witnessed or participated in two events relevant both to Waite, Schneider's and Davis's claims: 1) the alleged withdrawal, without cause, by the firm on March 17, 2011; and 2) the firm's alleged refusal, on March 18, 2011, to dissolve the dividend injunction and dismiss the Hamilton County Litigation.

Dusing should have known, moreover, that Waite, Schneider would dispute these allegations. Waite, Schneider's complaint had alleged the firm "fully performed in all respects its obligation under the Fee Agreement" with Davis. (Doc. 1 at ¶28). Indeed, a finding the firm had withdrawn without cause would have barred the firm from collecting under its contract with Davis. *W. Wagner & G. Wagner Co. L.P.A. v. Block*, 107 Ohio App. 3d 603, 608 (1995).

Furthermore, Waite, Schneider's discovery filings should have eliminated any doubt that Dusing was a necessary witness.

First, in March, 2012, Waite, Schneider sought documents from Davis pertaining to the firm's alleged withdrawal from the Hamilton County Litigation.

Second, in April, 2012, the firm identified Dusing himself as a person with knowledge of what the firm characterized as "secret settlements of disputes between Defendant Davis, his sons and CNG." (Doc. 192-3 at 3).

Whether that allegation was, in Dusing's mind, accurate is not relevant. What is relevant is that the allegation sufficed to put Dusing on notice of the firm's intent to contend Davis had improperly cut the firm out of the final settlement negotiations to avoid paying a fee.

Third, the proceedings on Waite, Schneider's motion to compel should have erased any lingering doubts, however unreasonable, Dusing was a necessary witness. There Waite, Schneider alleged – in March, 2013, and in no uncertain terms – that Davis and Dusing had "fabricated" a claim that the firm withdrew without cause "to avoid paying the fees owed." (Doc. 73 at 2).

Taken as a whole, this evidence belies Dusing's claim he could not have, and should not have, foreseen being a witness until the summary-judgment stage.

Nevertheless, Dusing remained as Davis's attorney of record and injected himself further into the fabric of the case. Of particular concern, Dusing used his status and authority as an attorney deposing his opponents (Chesley and Cummins) to force them to contradict a version of events that he now wishes to prove, not through his skill as an attorney, but through his testimony as an interested witness.

Having concluded Dusing breached his ethical duties under Rule 3.7, I now consider the appropriate sanction.

Waite, Schneider argues that exclusion of Dusing's testimony is the only appropriate sanction for what it contends is Davis and Dusing's "sharp litigation practice." (Doc. 192 at 3). The firm asserts that, if I permit Dusing to testify, I may need to postpone the trial once again to permit the firm to engage in what may be significant – and disputed – discovery.

Davis, whose response asserted only that no violation had occurred, does not suggest a different or less drastic sanction.

Despite the obvious nature of Dusing's violation, and the possible need to postpone the trial it has occasioned, I decline to bar Dusing from testifying. The error here is entirely of Dusing's own making, and the sanction should fall on his shoulders alone. But excluding his testimony would serve primarily to damage Davis's case, by depriving him of a necessary witness.

Furthermore, I anticipate that I can mask Dusing's participation during the pretrial phase of the case by not permitting the parties to reference him by name when using depositions or other materials that he may have authored or for which he was responsible during that phase. I can accomplish this by requiring the parties to use phrases like "a lawyer asked you," or some other opaque substitute for Dusing's name.

I am thus persuaded, at this point, that Dusing's dual status and failure to be more attentive to his ethical obligations are unlikely to come to the attention of the jury or cause any prejudice to Waite, Schneider at trial.

I will, however, consider at a later date shifting the costs Waite, Schneider incurs in conducting additional, reasonably necessary discovery occasioned by Dusing's anticipated trial testimony to Davis and/or Dusing.

For these reasons, I deny the motion to exclude Dusing.[7]

## X.    Effect of these rulings on Waite, Schneider's quantum meruit claim

In opposing several of Waite, Schneider's motions in limine, Davis has contended that any order barring him from presenting certain evidence would not apply to his defense against Waite, Schneider's quantum meruit claim.

That is, Davis contends he may still introduce any of the evidence I have determined to be inadmissible in his effort to defend against the quantum meruit claim.

Davis's contention has no merit, let alone a solid footing in Ohio law.

Indeed, none of the cases he cites stands for the proposition that, in defending against a quantum meruit claim under Ohio law, he may present any evidence bearing on the equities of Waite, Schneider's claim – including evidence that is properly excludable under Ohio law or the Federal Rules of Evidence.

Accordingly, I overrule Davis's objection that my evidentiary rulings apply only to his efforts to defend against the breach-of-contract claim.

_____

[7] Although Davis does not make the argument, I note there is some force to the contention Waite, Schneider waived its right to seek Dusing's disqualification by waiting until this late in the proceedings to so move. The evidence detailed above shows that not only Dusing, but also Waite, Schneider, has long been on notice of Dusing's status as a necessary witness. Nevertheless, the firm made no objection when the misconduct, which it now claims precludes Dusing from testifying, was occurring. Because the parties have not addressed this issue, I pursue it no further.

41

**Conclusion**

For these reasons, it is

ORDERED THAT:

1.      Waite, Schneider's motion for leave (Doc. 170) be, and the same hereby is, granted;

2.      Waite, Schneider's motion in limine to exclude evidence of its refusal to represent Davis in the non-Hamilton County Litigation (Doc. 178) be, and the same hereby is, granted;

3.      Waite, Schneider's motion in limine to exclude evidence of damages in the Hamilton County Litigation case (Doc. 164) be, and the same hereby is, granted;

4.      Waite, Schneider's motion in limine to exclude evidence of causation (Doc. 165) be, and the same hereby is, granted;

5.      Waite, Schneider's motion to exclude evidence of Davis's subjective understanding of the fee agreement (Doc. 163) be, and the same hereby is, granted, though without prejudice to Davis's ability to seek, in a timely manner, a determination the fee agreement is ambiguous;

6.      Waite, Schneider's motion to exclude evidence or argument that the fee agreement is unethical and/or unenforceable (Doc. 162) be, and the same hereby is granted in part and denied in part, though I reserve ruling on whether Davis may present evidence and argument that the fee agreement is unethical, unprofessional, and the like;

7.      Davis's motion to admit evidence of Chesley's disbarment (Doc. 166) be, and the same hereby is, granted in part and denied in part;

8. Waite, Schneider's motion in limine to exclude evidence of Chesley's disbarment (Doc. 161) be, and the same hereby is, denied as moot;

9. Davis's motion to strike report of Glenn Whitaker and exclude his testimony at trial (Doc. 152) be, and the same hereby is, granted in part and denied in part;

10. Waite, Schneider's motion to exclude testimony of Benjamin G. Dusing (Doc. 192) be, and the same hereby is, denied;

11. Ruling on Waite, Schneider's motion to vacate prior order permitting the filing of certain documents under seal (Doc. 157) is reserved pending further briefing;

12. Davis's motion for leave to file a sur-reply (Doc. 197) be, and the same hereby is, denied; and

13. All evidentiary rulings apply equally to Davis's effort to defend against the quantum meruit claim.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge